## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| **NEAL M. JACOBS** | : | |
| Debtor(s) | : | Bky. No. 01-24739ELF |
| _____ | : | |
| | : | |
| **ROBERT H. HOLBER, Chapter 7 Trustee** | : | |
| | : | |
| Plaintiff(s) | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 08-00013ELF |
| **NEAL M. JACOBS, et al** | : | |
| | : | |
| Defendant(s) | : | |
| _____ | : | |

# <u>O R D E R</u>

**AND NOW**, in the above-captioned adversary proceeding, Plaintiff Robert Holber, Chapter 7 Trustee ("the Trustee") having filed a twelve (12) count Complaint against the Debtor and Defendants Judith Jacobs ("Mrs. Jacobs"), Matthew Jacobs, Marc Jacobs, Hillcrest Racquet Club, Inc. ("Hillcrest") and M&M Real Estate, Inc. ("M&M") (all but the Debtor referred to collectively as "the Non-Debtor Defendants") on January 15, 2008 (Docket Entry No. 1);

**AND**, the Debtor and the Non-Debtor Defendants having filed Answers to the Trustee's Complaint on March 24, 2008 (Docket Entry No. 11);

**AND**, the Non-Debtor Defendants having filed a Motion for Summary Judgment with respect to Counts V, VI, VIII, IX, X, and XII of the Complaint on August 1, 2008 ("the

-1-

Summary Judgment Motion") (Docket Entry No. 29);[1]

    **AND**, the Trustee having filed a response to the Summary Judgment Motion on August

29, 2008 (Docket Entry No. 38), to which the Non-Debtor Defendants filed a reply on October

20, 2008 (Docket Entry No. 47);

    **AND**, on September 2, 2008, the parties having filed a Joint Pre-Trial Statement (Docket

Entry No. 40);

    **AND**, on October 23, 2008, the court having heard oral argument on the Summary

Judgment Motion;

    **AND**, as a result of the oral argument, the court having issued a scheduling order on

October 29, 2008 (Docket Entry No. 50) that:

    A.  permitted the Trustee to supplement the summary judgment record with
       respect to Count X of the Complaint; and

    B.  set a deadline of November 13, 2008 for the Trustee to file a motion for leave
       to file an amended complaint;

    **AND,** the Trustee having then:

    A.  supplemented the summary judgment record and filed a "Supplemental Brief in
       Opposition to Non-Debtor Defendants' Motion for Summary Judgment" ("the
       Supplemental Brief") on October 30, 2008 (Docket Entry No. 52); and

    B.  filed a "Motion to Amend Complaint Seeking to Avoid Transfers and for
       Turnover of Property of the Bankruptcy Estate" ("the Motion to Amend") on
       November 11, 2008 (Docket Entry No. 54);

---

[1]     The Non-Debtor Defendants also moved for summary judgment on Counts I and IV, which were brought against the Debtor only.  The Non-Debtor Defendants lack standing to address these counts. Accordingly, I will deny the Summary Judgment Motion summarily with respect to Counts I and IV.

**AND**, the Non-Debtor Defendants having:

    A.  filed a response to the Supplemental Brief on November 13, 2008 (Docket
Entry No. 56); and

    B.  filed a response to the Motion to Amend on December 1, 2008, which
included a request for relief titled as a "Cross Motion for Dismissal Under
§546 of the Code" ("the Cross Motion") (Docket Entry No. 58);

**AND**, the Trustee having filed, <u>inter alia</u>, a response to the Cross Motion on December

19, 2008 (Docket Entry No. 62);

**AND**, the court having considered the Summary Judgment Motion,  the Cross Motion, the

Motion to Amend, the arguments advanced by the parties at the October 23, 2008 hearing, as well

as all of the parties' supporting written submissions;

## THE SUMMARY JUDGMENT MOTION

**AND,** Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56(c) providing that summary judgment

should be granted when the "pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c);[2]

---

[2]      Before a motion for summary judgment may be granted, the court must find that the
motion alleges facts which, if proven at trial, would require a directed verdict in favor of the movant.  <u>See</u>
<u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993).  If the movant meets this initial burden,
the responding party may not rest on his or her pleadings, but must designate specific factual averments
through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual
dispute.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324,106 S.Ct. 2548, 2553 (1986); <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 247-50, 106 S.Ct. 2505, 2510-11 (1986).  Such evidence must be sufficient to
support a jury's factual determination in favor of the nonmoving party.  <u>Id.</u>  Evidence that merely raises
some metaphysical doubt regarding the validity of a material facts is insufficient.  <u>Matsushita Elec. Indus.</u>
<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).  If the party opposing the
motion believes that summary judgment is premature, Rule 56(f) requires the party to present by affidavit
the reasons why the party is presently unable to submit evidence in opposition to the motion.  <u>Celotex</u>, 477

### Count V – Post-Petition Payments Pursuant to the Greshville Note

**AND**, the parties agreeing that the following facts pertaining to Count V of the Complaint

are not in dispute:

A. On March 10, 1995, a Note was signed by Greshville Realty, Inc. promising to pay to the Debtor the principal sum of $135,000.

B. On March 10, 1995, Greshville Realty, Inc. also signed a Mortgage securing payment to the Debtor under the Note.

C. Greshville Realty, Inc. was required to make payments under the Note in the amount of $2,000 per month.

D. Mrs. Jacobs made one or more loans to Greshville Realty, Inc.

E. On or about March 30, 1995, in connection with said loans from Mrs. Jacobs, Debtor executed a Collateral Pledge of Stock Agreement and an Assignment of Mortgage.[3]

---

U.S. at 326, 106 S.Ct. at 2554.

In considering the evidentiary matter submitted in support and in opposition to a summary judgment motion, the court's role is not to weigh the evidence, but only to determine whether there is a disputed, material fact for determination at trial. Anderson, 477 U.S. at 247-50, 106 S. Ct. at 2510-11. A dispute about a "material" fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. at 2510. All reasonable inferences must be drawn in favor of the nonmoving party and against the movant. United States v.717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993).

Finally, the application of these general principles is affected by the allocation of the burden of proof were the matter to go to trial. If the moving party on summary judgment does not bear the burden of proof at trial, the movant still has the initial burden of demonstrating the absence of a genuine issue of material fact, but this does not require the movant to support the motion with affidavits or other materials negating the opponent's claim. If the movant bears the burden of proof at trial, it must support its motion with competent, credible evidence in support of all the essential elements of its case on which it bears the burden of proof. See, e.g., In re Newman, 304 B.R. 188, 193 (Bankr. E.D. Pa. 2002).

---

[3]      Neither the Complaint nor the parties' Joint Pre-Trial Statement is explicit on the point, but it is obvious that the "assignment" executed by the Debtor was in favor of Mrs. Jacobs.

    F.  The Assignment of Mortgage was never recorded.

    G.  The balance under the Note as of the date of the filing of the Debtor's
bankruptcy petition was $51,000.[4]

<u>See</u> Joint Pre-Trial Statement at 3;

    **AND**, in Count V of the Complaint, the Trustee having asserted a claim against the

Debtor and Mrs. Jacobs for "turnover" of assets and/or avoidance of a prepetition transfer

pursuant to 11 U.S.C. §544;[5]

    **AND**, the Non-Debtor Defendants having argued that summary judgment is warranted

because Mrs. Jacobs' possession of the note and mortgage perfected the transfer in 1995 and

defeats the Trustee's §544 avoidance claim;

    **AND**, the Trustee having established a genuine issue of material fact based on sworn

statements made by the Debtor;[6]

---

[4]    There is no dispute with respect to Count V or any of the other Counts, that the bankruptcy petition in this case was filed on October 11, 2001.

[5]    The Trustee's legal theory appears to be that the alleged transfer of the Debtor's beneficial interest in the Note and Mortgage is avoidable under §544 because the assignment was not recorded and therefore, is avoidable under applicable non-bankruptcy law. Upon avoidance of the transfer, the Trustee then seeks "turnover" of all postpetition payments (alleged to total $51,000). The Trustee cites no legal authority for the turnover request made in Count V. Presumably, the request is based on 11 U.S.C. §542, the Code section cited fleetingly in the opening, introductory paragraph of the Complaint.

[6]    The Debtor's Schedules and Statement of Financial Affairs suggest that, even after the alleged assignment to Mrs. Jacobs, the Debtor continued to receive the income stream from the Note. On Schedule B, the Debtor lists the Note and the Mortgage as an asset. On Schedule I, the Debtor also reported that his only income of $2,000 per month is attributable to the "Greshville Realty Note". Finally, in his Statement of Financial Affairs, the Debtor disclosed that the source of his income, other than from employment for the years 1999, 2000 and 2001, was the "monthly installment of $2,000 per month for Note and Mortgage dated 3/10/95 provided by Greshville Realty, Inc. . . . ."

**AND**, therefore, the court concluding the Non-Debtor Defendants are not entitled to

summary judgment on Count V;

## Count VI – Income Tax Refund For 1994

**AND**, in Count VI of the Complaint, the Trustee having asserted a claim against the

Debtor and Mrs. Jacobs  pursuant to 11 U.S.C. §548;[7]

---

All of these statements by the Debtor suggest either that: (1) the alleged transfer of the Note and Mortgage to Mrs. Jacobs was illusory (i.e., that the Debtor retained the beneficial interest in the Note and Mortgage) and therefore, that the Debtor's interest in the Note and Mortgage was property of the estate as of the commencement of the case and susceptible to turnover; or (2) assuming arguendo that the transfer of a lien interest in real property can be perfected by physical possession of a written instrument governing the property interest,  Mrs. Jacobs lacked sufficient possession and control of the Note and Mortgage to perfect her interest in the Note and Mortgage.  Either way, the Trustee has met his burden on summary judgment of showing that a disputed issue of material fact exists.

[7]   Section 548 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), effective as to cases filed beginning October 17, 2005.  Because the Debtor's bankruptcy case was filed prior to October 17, 2005, I will discuss and apply the previous version of the provision.  That version of §548 provides:

(a)(1) The Trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor, that was made or incurred within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(A) made such transfer or incurred such obligation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)      (i) received less than reasonably equivalent value in exchange for such transfer or obligation; and

(ii)      (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

-6-

**AND,** the parties agreeing that the following facts pertaining to Count VI of the

Complaint are not in dispute:

> A.  On or about May 18, 2001, Debtor and Mrs. Jacobs filed an Amended U.S.
>     Individual Income Tax Return 1040X for tax year 1994.
>
> B.  The Amended 1040X for tax year 1994 shows a refund due in the amount of
>     $114,607 resulting from a net operating loss attributable to NGN, Inc. in 1997
>     which was carried back and applied to tax years 1994 and 1995.
>
> C.  On or about August 8, 2001, the tax refund in the amount of $114,607.18 was
>     deposited into a National Penn Bank ("NPB") checking account titled in the
>     names of Judith Ann Jacobs and Matthew C. Jacobs.

See Joint Pre-Trial Statement at 3;

**AND**, the Non-Debtor Defendants arguing that, in the absence of evidence to the

contrary, the court must assume, for purposes of this proceeding, that the money refunded by the

IRS was property owned by the Debtor and Mrs. Jacobs as tenants by the entireties;

**AND**, the Non-Debtor Defendants arguing further that under applicable nonbankruptcy

law (i.e, Pennsylvania law), the transfer of tax refund monies (asserted to be held as tenants by the

entireties) is not subject to avoidance where, as in this case, there are no joint, unsecured creditors

of the Debtor and his non-debtor spouse;

**AND**, accepting arguendo, the arguments set forth in the preceding two (2) paragraphs,

the court nevertheless concluding that a prepetition transfer of entireties property is subject to

avoidance under 11 U.S.C. §548 (even if, the property is not subject to avoidance as a fraudulent

transfer under applicable nonbankruptcy law), see In re Smoot, 265 B.R. 128, 136-37 (Bankr.

E.D. Va. 1999), aff'd 257 F.3d 401 (4th Cir. 2001); In re Wickstrom, 113 B.R. 339  (Bankr. W.D.

-7-

Mich.1990).  But see In re Treiber, 92 B.R. 930 (Bankr. N.D. Okl. 1988);[8]

**AND**, accordingly, the court concluding that the Non-Debtor Defendants are not entitled

to judgment as a matter of law on Count VI of the Complaint;

### Count VIII – Transfer of Real Estate to M&M Real Estate

**AND,** in Count VIII of the Complaint, the Trustee having asserted a claim against the

Debtor and his sons, Matthew Jacobs and Marc Jacobs, pursuant to 11 U.S.C. §548;

**AND,** the parties agreeing that the following facts pertaining to Count VIII of the

Complaint are not in dispute:

> A. On or about July 18, 2001, an Agreement of Sale was executed between NKM, Ltd. and M&M for the sale of certain real estate located in Exeter Township, Berks County, Pennsylvania.
>
> B. The shareholders of M&M are Matthew and Marc Jacobs.
>
> C. A deed dated July 18, 2001 evidencing the transfer was recorded at the Berks County Recorder's Office on July 26, 2001.
>
> D. NKM, Ltd. purchased the real estate for $1,400,000.00 in 1996 and sold it to M&M in 2001 for $1,124,573.09.
>
> E. On or about July 23, 2001, NPB made a loan in the amount of $1,405,000 to Hillcrest and M&M.

---

[8]    The Trustee disputes one of the premises of the Non-Debtor Defendants' argument  –  that the income tax refund was in the form of a tenancy by the entireties when the Debtor and Mrs. Jacobs received the refund from the IRS.  My decision to follow Smoot and allow the Trustee's claim under §548 to proceed to trial makes it unnecessary to evaluate and take a position with respect to the split of authority on the questions whether a joint federal income tax refund qualifies as a property held as tenancy by the entireties and, if not,  how the value of the tax refund should be apportioned between the debtor and a non-debtor spouse.  Compare In re Carlson, 394 B.R. 491 (B.A.P. 8th Cir. 2008);  In re Kleinfeldt, 287 B.R. 291 (B.A.P 10th Cir. 2002); In re Gartman, 372 B.R. 790 (Bankr. D.S.C. 2007); In re WDH Howell, 294 B.R. 613 (Bankr. D.N.J. 2003) with In re Freeman, 387 B.R. 871 (Bankr. M.D. Fl. 2008); In re Kossow, 325 B.R. 478 (Bankr. S.D. Fl. 2005); In re Innis, 331 B.R. 784 (Bankr. C.D. Ill. 2005); In re Aldrich, 250 B.R.907 (Bankr. W.D. Tenn 2000); Bass v. Hall, 79 B.R. 653 (W.D. Va. 1987).

See Joint Pre-Trial Statement at 4;

**AND**, the Non-Debtor Defendants arguing that they received adequate consideration for

the transfer of the real estate;

**§548(a)(1)(A)**

**AND**, adequate consideration being irrelevant to the avoidability of a transfer under

§548(a)(1)(A) and therefore, adequate consideration not being a defense to the Trustee's claim

under §548(a)(1)(A);[9]

**AND**, there being a disputed issue of material fact as to whether the Debtor effected the

transfer with an "actual intent" to hinder, delay or defraud creditors under §548(a)(1)(A);[10]

**AND**, therefore the court concluding that the Non-Debtor Defendants are not entitled to

summary judgment on Count VIII under 11 U.S.C. §548(a)(1)(A);

---

[9]      See In re Cohen, 199 B.R. 709, 717 (9th Cir. BAP 1996) ("Unlike constructively
fraudulent transfers, the adequacy or equivalence of consideration provided for the actually fraudulent
transfer is not material to the question whether the transfer is actually fraudulent.") (citations omitted); 5
Collier on Bankruptcy ¶ 548.04[3] (15th rev. ed. 2008) ("When a transfer is made with the requisite actual
intent, the debtor's receipt of reasonably equivalent value is immaterial.") (citations omitted).

[10]     The transactions at issue in Count VIII, as well as those in Count VI, IX and X, occurred
between family members and during the months of July and August of 2001 – within a few months of the
entry of a $2.2 million dollar judgment issued against the Debtor in the Viener Litigation on April 24,
2001.  This raises a genuine issue of material fact as to the Debtor's fraudulent intent, which may be
established by circumstantial evidence through consideration of circumstances known as "badges of fraud."
See, e.g., In re Harris, 2003 WL 23096966, at * 2 (Bankr. D. Del. 2003) ("Some of the pertinent 'badges
of fraud' include: (1) family relationship between the parties; (2) inadequacy of consideration; (3) the
financial condition of the debtor before and after the transaction; (4) the pendency or threat of suits by
creditors; and (5) whether the debtor retained possession of the property following the transfer.").

**§548(a)(1)(B)**

**AND**, adequate consideration being a defense to the avoidability of a transfer under 11 U.S.C. §548(a)(1)(B);

**AND**, the Non-Debtor Defendants having produced evidence that the consideration paid to the Debtor for the transfer of the subject property was adequate;

**AND**, the Trustee having failed to come forward with any evidence to rebut the evidence produced by the Non-Debtor Defendants on the issue of the adequacy of the consideration;

**AND**, therefore, the court concluding that the Trustee has failed to meet his burden of establishing the existence of a genuine issue of material fact in support of his contention that the value received by the Debtor was not "reasonably equivalent" for purposes of §548(a)(1)(B);

**AND**, therefore the court concluding that the Non-Debtor Defendants are entitled to summary judgment under 11 U.S.C. §548(a)(1)(B);

### Count IX – Pledge of Securities to NPB

**AND,** in Count IX of the Complaint, the Trustee having asserted a claim against the Debtor, Hillcrest, M&M, Matthew Jacobs and Marc Jacobs, pursuant to 11 U.S.C §§544,[11] 550 and the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. §5101 et. seq.;

**AND,** the parties agreeing that the following facts pertaining to Count IX of the Trustee's Complaint are not in dispute:

---

[11]    The Trustee does not state whether his claim arises under §544(a), §544(b) or both.

    A.  The Debtor and Mrs. Jacobs offered their unlimited sureties as an additional credit enhancement for the July 23, 2001, NPB loan of $1,405,000 to Hillcrest and M&M, as evidenced by a Suretyship Agreement dated July 23, 2001.

    B.  The Debtor and Mrs. Jacobs also pledged approximately $468,819.72 in a Penn Securities Inc. account to NPB as collateral for the loan.

See Joint Pre-Trial Statement at 4-5;

    **AND**, §544 being a provision of the Bankruptcy Code ("the Code") whereby the Trustee may set aside a prepetition transfer of property that is avoidable under applicable non-bankruptcy law; see 5 Collier on Bankruptcy ¶544.02 (15th rev. ed. 2008);

    **AND**, the Trustee, through 11 U.S.C. §544, invoking Pennsylvania law in his attempt to avoid as fraudulent the transfer of the securities account owned jointly as tenants by the entireties by the Debtor and Mrs. Jacobs;

    **AND**, in Pennsylvania, as a matter of law, the transfer of entireties property by a husband and wife **<u>not</u>** being a fraud upon the creditors holding claims against only one (1) spouse; <u>see, e.g.</u>, <u>C.I.T. Corp.  v. Flint et al.</u>, 5 A.3d 126 (Pa. 1939);

    **AND**, for this reason, the Non-Debtor Defendants being entitled to judgment as a matter of law on Count IX to the extent that the Trustee asserts a claim under 11 U.S.C. §544(a);

    **AND**, the Trustee making no allegation and providing no evidence that an actual, prepetition creditor exists who holds a claim against the Debtor and Mrs. Jacobs jointly so as to render the challenged transfer avoidable as to that creditor under Pennsylvania law;

    **AND**, for this reason, the Non-Debtor Defendants also being entitled to judgment as a matter of law on Count IX to the extent that the Trustee asserts a claim under 11 U.S.C. §544(b);

**Count X – Subordination of Hillcrest Racquet Club, Inc. Loan**

**AND,** in Count X of the Complaint, the Trustee having asserted a claim against the

Debtor, Hillcrest, M&M, Matthew Jacobs and Marc Jacobs, pursuant to 11 U.S.C. §§544, 550

and the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. §5101 et. seq.;

**AND,** the parties agreeing that the following facts pertaining to Count X of the Complaint

are not in dispute:

> A.  The Debtor made a series of prepetition loans to Hillcrest that totaled
>     approximately $210,000.
>
> B.  A federal gift tax return was never filed with respect to any of the prepetition
>     loans from Debtor to Hillcrest.
>
> C.  The debt owed by Hillcrest to the Debtor in the amount of $210,000 was fully
>     subordinated to NPB as evidenced by the execution of a Subordination
>     Agreement dated July 23, 2001.

See Joint Pre-Trial Statement at 5;

**AND,** the avoidance of transfer under §544 of the Code necessarily requiring that a

"transfer"[12] has first taken place;

**AND,** the Non-Debtor Defendants asserting that they are entitled to judgment because the

Subordination Agreement did not effect a "transfer" within the meaning of the Code;

---

[12]    11 U.S.C. §101(54) provides that the term "transfer" means:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or
> involuntary, of disposing of or parting with –
> > (i) property; or
> > (ii) an interest in property.

**AND**, the court being unable to conclude, as a matter of law, that the Subordination

Agreement did not effect a transfer of an interest in property;[13]

---

[13]        The Trustee submitted a copy of an executed copy of the Subordination Agreement among the Debtor, Hillcrest, M&M and NPB.  See Subordination Agreement attached as Exhibit A to Supplemental Brief at Docket Entry No. 52. After reviewing the Subordination Agreement, I conclude that it effected a transfer of "an interest in property" within the meaning of 11 U.S.C. §101(54).

        Because the record is not explicit, I infer that the Debtor's loan to Hillcrest was an unsecured debt.  The Subordination Agreement precluded the Debtor from collecting any payments from Hillcrest, except for accrued interest, prior to the repayment in full of Hillcrest's debt to NPB.  Thus, for the benefit of Hillcrest and M&M (i.e., to facilitate the grant of the loan to those entities by NPB), the Debtor ceded to NPB certain of his "collection rights" as an unsecured creditor of Hillcrest.

        Neither party was able to cite and my research was unable to locate any reported decision, pro or con, on the question whether the prepetition subordination of a debtor's collection rights with respect to an unsecured debt is a transfer that is subject to avoidance under the Code. Based on application of the general principles employed by the courts in construing the parameters of the concept of "transfer" under the Code, I conclude that the Subordination Agreement here effected a transfer.  While it may not have been a transfer in the most common and conventional form (e.g., transferring title to property, granting a lien, assigning contractual rights), it nonetheless resulted in the diminution of the Debtor's contractual collection rights in favor of NPB and thereby arguably transferred an interest in property to NPB.  See generally Matter of Besing, 981 F.2d 1488, 1492 (5th Cir.1993), cert. denied, 510 U.S. 821, 114 S.Ct. 79 (1993) ("Congress intended for the Code's definition of 'transfer' to be as broad as possible"); In re Richmond Produce Co., Inc., 151 B.R. 1012, 1017 (Bankr. N.D. Cal. 1993), aff'd 195 B.R. 455 (N.D. Cal. 1996) (Code's definition of transfer is "sufficiently broad to include within its scope a transfer that results in a modification of the form or value of the property transferred"); In re Wallaert, 149 B.R. 665, 668 (Bankr. W.D. Wash. 1992) (Code definition of transfer "focuses on what, if anything, the debtor parted with" and "unambiguously comprehends any disposition of any interest in property").

        At this stage, I make one final observation.  The Trustee's legal theory in Count X mirrors that of Count IX.  He asserts that a transfer was made to NPB for the benefit of the Non-Debtor Defendants and claims that, under 11 U.S.C. §550(a), the bankruptcy estate may recover the value of the property transferred from the entities "for whose benefit such transfer was made." Assuming that the Trustee establishes the avoidability of the transfer under §548, it remains to be seen whether he can quantify,  for purposes of §550(a), the value of the property rights transferred by the Debtor through the Subordination Agreement.

**AND**, therefore, the Non-Debtor Defendants not being entitled to judgment as a matter of law on Count X;

### Count XII – Transfer of WIS Small Cap Partners Investment

**AND,** in Count XII of the Complaint, the Trustee having asserted a claim against the Debtor, Matthew Jacobs and Marc Jacobs, pursuant to 11 U.S.C §§544, 550 and the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. §5101 et. seq.;

**AND,** the parties agreeing that the following facts pertaining to Count XII of the Complaint are not in dispute:

  A. The Debtor and Mrs. Jacobs held an investment in a small cap fund managed by Tom Weik known as WIS Small-Cap Partners ("the WIS Account").

  B. The investment was liquidated in 1999.

  C. The proceeds from this investment in the amount of $200,000 were transferred to the Debtor's sons, Matthew and Marc in or around 2000.

  D. A gift tax return was filed with respect to these proceeds.

See Joint Pre-Trial Statement at 5-6;

**AND**, the Trustee, through §544, attempting to avoid as a fraudulent transfer under Pennsylvania law the transfer of the WIS Account to the Debtor's sons;

**AND**, as stated earlier in connection with Count IX, in Pennsylvania, as a matter of law, the transfer of property owned by a husband and wife as tenants by the entireties not being a fraud

-14-

upon the creditors holding claims against only one (1) spouse; see Flint, 5 A.3d 126;

**AND**, there appearing to be no factual dispute that the subject asset was owned by the

Debtor and his Mrs. Jacobs as tenants by the entireties prior to the transfer that the Trustee seeks

to avoid;

**AND**, for the same reasons as discussed in connection with Count IX, the Non-Debtor

Defendants being entitled to a judgment as a matter of law on Count XII;


**THE CROSS MOTION**

**AND**, the Cross Motion, having been filed by the Non-Debtor Defendants as part of its

response to the Motion to Amend;

**AND**, the Cross Motion suffering from two (2) procedural irregularities, both of which

justify its denial;[14]

**AND**, alternatively, on the merits, the Non-Debtor Defendants having failed to establish

their entitlement to summary judgment because their contention that the Complaint was not timely

filed is erroneous;[15]

---

[14]     First, by seeking relief in the form of a "cross motion" included as part of a response to the
Motion to Amend, the Non-Debtor Defendants failed to comply with L.B.R. 7005-1 and 9014-3. Second,
by raising new grounds for entry of judgment in their favor, the Non-Debtor Defendants, in effect, filed an
untimely motion for summary judgment, in violation of this Court's Order dated July 28, 2008. That Order
set August 1, 2008 as the deadline for the filing of summary judgment motions (i.e., pre-trial dispositive
motions). See Docket Entry Nos. 12 and 26. The Cross Motion was filed four (4) months after the
deadline set by the court.

[15]     Citing to §546(a) of the Code, the Non-Debtor Defendants claim that the Trustee's action
is time barred because it was brought more than two years after the bankruptcy case was filed. They
acknowledge that the bankruptcy court granted a motion to extend the §546(a) deadline, but fail to specify
the court order to which they refer or where it may be found in the record. They also argue, without citing

**AND**, for these reasons the court concluding that the Cross Motion should be denied;

## THE MOTION TO AMEND

**AND**, in the Motion to Amend, the Trustee seeking to amend Counts IX, X and XII;

**AND**, Fed. R. Civ. P. 15(a), made applicable to this proceeding by Fed. R. Bankr. P.

---

any legal authority, that nothing in the Code authorizes the extension.

The Order that the Non-Debtor Defendants reference only obliquely in the Cross Motion was the court's Order dated November 20, 2003 ("the Extension Order"), entered by Judge Twardowski. The Extension Order granted the Trustee's Motion for Enlargement of Time to Commence Certain Actions Under 11 U.S.C. §§108 and 546, see Bankruptcy Case No. 01-24739, Docket Entry No. 78, and granted the Trustee an extension of time "to file appropriate avoidance and or turnover action . . . until ninety days after a final non-appealable order is entered in the state court proceedings [in the Viener v. Jacobs litigation]."

The Extension Order appears to have been entered based on the exercise of the court's discretion to equitably toll the limitations period set forth in §546(a). While there is no binding precedent in this Circuit, Courts of Appeal in other circuits have held that bankruptcy courts have such authority. See In re Int'l Admin. Servs., Inc., 408 F.3d 689, 699 (11th Cir. 2005); In re M & L Bus. Mach. Co., Inc., 75 F.3d 586, 591 (10th Cir.1996); In re United Ins. Mgmt., Inc., 14 F.3d 1380, 1384 ( 9th Cir. 1994); see also In re Harry Levin, Inc., 175 B.R. 560, 579 (Bankr. E.D. Pa. 1994) (generally, federal common law tolling doctrines apply to all federal limitations statutes, including those found in the Bankruptcy Code), leave to appeal denied, 1995 WL 581431 (E.D. Pa.  Sept. 29, 1995).

I also note that the Complaint appears to have been filed timely under the terms of the Extension Order.  The length of the extension of time granted is tied to the completion of the state court proceedings known as "the Viener Litigation."  This court is well aware of the Viener Litigation.  See In re Jacobs, 381 B.R 128, 132-35 (Bankr. E.D. Pa. 2008); In re Jacobs, 381 B.R. 147, 154-57 (Bankr. E.D. Pa. 2008).  Based on my review of the applicable state court dockets, see In re Soto, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998) (bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction), I have ascertained that the Trustee's extension remained in effect, at a minimum, to some date after March 20, 2008.  March 20, 2008 was the date that the Pennsylvania Supreme Court denied the Debtor's Petition for Allocatur filed in connection with the money judgment entered against him in state court.  The state court judgment may have become final some time after March 20, 2008, if the Debtor failed to file a timely request for the grant of a writ of certiorari by the U.S Supreme Court or if such a request was made and denied.   The exact date is immaterial because the Trustee's Complaint in this proceeding was filed on January 15, 2008, more than two (2) months before the Pennsylvania Supreme Court's denial of allocatur, and therefore, indisputably, was filed  within the extension period granted by the Extension Order.

-16-

7015, providing that granting a party's request to amend its complaint is within the sound

discretion of the court; e.g., In re Fleming Companies, Inc., 323 B.R. 144 (Bankr. D. Del. 2005)

(quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L. Ed.2d 222 (1962));

**AND**, "though granting such a request is within the discretion of the court, courts have

shown a strong liberality . . . in allowing amendments," In re Mortgage Lenders Network, USA,

Inc., 395 B.R. 871, 876 (Bankr. D. Del. 2008) (internal quotations and citations omitted);

**AND**, in ruling on a motion to amend a complaint, it being appropriate for the court to

consider whether the delay in seeking amendment is prejudicial to the opposing party or if the

amendment is futile in that it fails to state a claim for which relief can be granted; see Cureton v.

Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272-73 (3d Cir. 2001);   Mortgage Lenders

Network, 395 B.R. at 876;

**AND**, delay in amending a complaint being prejudicial when it "plac[es] an unfair burden

on the opposing party," Cureton, 252 F.3d at 273 (quoting Adams v. Gould, Inc.,739 F.2d 858

(3d Cir. 1984)) (internal quotations omitted);

**AND**, when considering prejudice, courts focusing on the burden to the non-moving party

if the amendment is allowed, "[s]pecifically . . .  whether allowing an amendment would result in

additional discovery, cost, and preparation to defend against new facts or new theories," Cureton,

252 F.3d at 273.[16]

**AND**, an amended complaint relating back to the date of the original complaint if it

"merely adds a new legal ground for relief," In re Austin Driveway Servs., Inc., 179 B.R. 390,

---

[16]        The Third Circuit has stated that the nonmoving party must "demonstrate that its ability to
present its case would be seriously impaired were amendment allowed." Dole v. Arco, 921 F.2d 484, 489
(3d Cir.1990) (emphasis added).

395 (Bankr. D. Conn. 1995) (citations omitted); accord Charles A. Wright, Arthur R. Miller,

Mary K. Kane, 6A Federal Practice and Procedure 3d §1497 & authorities cited in n.40 (West

2008);

AND, it being appropriate to deny a motion to amend on the basis of futility only if the

amendment could not survive a motion to dismiss, see Jablonski v. Pan American World Airways,

Inc., 863 F.2d 289, 292 (3d Cir. 1988); In re Quality Botanical Ingredients, Inc. 249 B.R. 619

(Bankr. D.N.J. 2000);

### amendment to Count IX

AND, the Trustee seeking to add a claim under 11 U.S.C. §548 to Count IX, which

pertains to the pledge of a securities account held by the Debtor and Mrs. Jacobs to NPB;

AND, the amendment to Count IX not being prejudicial to the Non-Debtor Defendants in

that it merely adds a new legal theory for relief based on the facts already set forth in the original

Complaint and as to which the parties have already had an opportunity to develop in discovery;

AND, it appearing that permitting the amendment will not necessitate any delay in the trial

of this proceeding;

AND, the amendment to Count IX not being futile;[17]

AND, the amendment to Count IX not being inconsistent with the requirements of Fed. R.

---

[17]    The amendment to include a claim under §548 to Count IX is not futile based on my
previous conclusion that a prepetition transfer of entireties property is subject to avoidance under 11
U.S.C. §548 even though the property is not subject to avoidance as a fraudulent transfer under applicable
nonbankruptcy law, see Smoot, 265 B.R. at 136-37.

Bankr. P. 7019 and Fed. R. Civ. P. 19 ("Rule 19");[18]

_____

[18]        In response to Count IX, as originally pled (in which the Trustee invoked only §544), the Non-Debtor Defendants asserted that the claim should be dismissed based on Rule 19.  See Non-Debtor Defendants' Memorandum of Law at 12-14 (Docket Entry No. 56).  Specifically, the Non-Debtor Defendants assert that because NPB is not a party and Mrs. Jacobs is not named as a defendant in Count IX, the claim should be dismissed.

        As set forth earlier, the Trustee's Count IX claim under §544 is being dismissed on other grounds.  However, if meritorious, the Non-Debtor Defendants' Rule 19 argument applies equally to §548, the claim that the Trustee seeks to add by amendment.  Consequently, I address the issue for purposes of determining whether the Trustee should be permitted to amend Count IX to include the §548 claim.

        In analyzing an absent party's joinder under Rule 19, the court must first determine whether it should be joined as a "necessary" party under Rule 19(a).  See General Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007).  Rule 19(a) has two subsections that are phrased in the disjunctive.  "Thus, any party whose absence results in any of the problems identified in either subsections (a)(1) or (a)(2) is a party whose joinder is compulsory if feasible."  Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993).  Only if a party in "necessary" under Rule 19(a), must the court determine whether the party is "indispensable" under Rule 19(b).

        Under Rule 19(a)(1), the question is whether complete relief can be accorded to the parties to the action in the absence of the unjoined party.  Fed. R. Civ. P. 19(a)(1).  The effect that decision may have on the absent party is immaterial.  Id.  Here, the Trustee seeks relief only against the Non-Debtor Defendants (the parties he alleges "for whose benefit [the] transfer was made," 11 U.S.C. §550(a)(1)), "the value" of the property transferred, see 11 U.S.C. §550 (a).  The Trustee does not seek to modify the lien rights of NPB or Mrs. Jacobs' ownership rights in the subject asset. Therefore, complete relief can be accorded to the Trustee from the parties already present and neither NPB nor Mrs. Jacobs are necessary parties under subsection (a)(1).

        Under Rule 19(a)(2), which has two additional subsections, the court must consider the impact the dispute's resolution may have on the absent parties.  See General Refractories Co., 500 F.3d at 316.

        Under Rule 19(a)(2)(i), the court must decide whether the determination of the rights of those persons named as parties to the action would "impair or impede the person's ability to protect the interest" in the subject matter of the litigation.  Fed. R. Civ. P. 19(a)(2)(i); see also Janney Montgomery Scott, 11 F.3d at 409.  Again, while both Mrs. Jacobs and NPB have an interest in the securities account at issue, they cannot be necessary parties under Rule 19(a)(2)(i) because their interests are not susceptible to any impairment since the Trustee does not seek to disturb those property rights.

        Under Rule 19(a)(2)(ii), the court must decide whether continuation of the action would expose named parties to the "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Fed. R. Civ. P. 19(a)(2)(ii).  Rule 19(a)(2)(ii) was intended to protect against inconsistent obligations, not inconsistent adjudications.  See Transdermal Products, Inc. v. Performance Contract Packaging, Inc., 1996 WL 515497, at * 2 (E.D. Pa. 1996).  In other words, Rule

**amendment to Count X**

**AND**, the Trustee seeking to add a claim under 11 U.S.C. §548 to Count X, which

pertains to the Debtor's subordination of a loan he made to Hillcrest in favor of NPB;

**AND**, the amendment to Count X not being futile for the same reasons the court has

concluded that the Non-Debtor Defendants' motion for summary judgment on the §544 claims

should be denied;

---

19(a)(2)(ii) protects a party against situations in which two court orders may be entered and compliance with one might breach the other.  Id.  By contrast, an inconsistent adjudication occurs "when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum."  Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998) (citations omitted).  "Moreover, where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages."  Id.  (citing In re Torcise, 116 F.3d 860, 866 (11th Cir.1997)).  Finally, the risk at issue must be "substantial," consisting of "more than a mere possible risk of litigation." Sindia Expedition, Inc. v. Wrecked and Abandoned Vessel known as "The Sindia", 895 F.2d 116, 122 (3d Cir.1990); accord Temple Univ. Hosp., Inc. v. Group Health, Inc., 413 F.Supp.2d 420, 426 (E.D. Pa. 2005); Charles Alan Wright, Arthur Miller and Mary Kay Kane, 7 Federal Practice and Procedure 3d § 1604 (West 2008). ("The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.")

The Non-Debtor Defendants have identified no pending matter that could expose them to multiple, or otherwise inconsistent obligations due to the absence of NPB and Mrs. Jacobs.  Nor have the Non-Debtor Defendants articulated the basis for any potential risk that they may be to the type of liability Rule 19(a)(2)(ii) contemplates.  Given the nature of the Trustee's §§548, 550 claims, it is difficult to comprehend such a possibility.  Finally, the Non-Debtor Defendants have not cited any case law in which a court has dismissed a transfer avoidance proceeding in order to protect a "defendant-transfer-beneficiary" under §550(a) of the Code from the risk of multiple liability.

In these circumstances and on this record, I conclude that neither Mrs. Jacobs nor NPB are necessary parties under Rule 19(a)(2)(ii).  Accordingly, it is unnecessary for me to reach the issue of whether they are indispensable under Rule 19(b).  See Janney Montgomery Scott, 11 F.3d at 413.

**amendment to Count XII**

**AND**, the Trustee seeking to add a claim under 11 U.S.C. §548 to Count XII, which

pertains to the transfer of the WIS Account by the Debtor and Mrs. Jacobs to their sons, Matthew

and Marc;

**AND**, the amendment to Count XII not being futile or prejudicial to the Non-Debtor

Defendants in light of the court's conclusion that a prepetition transfer of entireties property is

subject to avoidance under 11 U.S.C. §548 even though the property is not subject to avoidance

as a fraudulent transfer under applicable nonbankruptcy law, see Smoot, 265 B.R. at 136-37;

**AND**, the court further concluding that a disputed issue of material fact exists with respect

to the date on which the transfer occurred;[19]


It is hereby **ORDERED** and **DETERMINED** that:

1. The **Summary Judgment Motion** is **GRANTED IN PART AND DENIED IN PART** as

follows:

    A.    Judgment is **GRANTED** in favor of the Non-Debtor Defendants on the Trustee's
claim under 11 U.S.C. §548(a)(1)(B) set forth in **Count VIII**.

    B.    Judgment is **GRANTED** in favor of the Non-Debtor Defendants on the Trustee's
claims under 11 U.S.C. §544 set forth in **Count IX**.

---

[19] Despite the Non-Debtor Defendants contention that the transfer occurred in December 1999, but
no later than January 2000, the Trustee suggests that the actual transfer might have occurred much later.
Specifically, the Trustee pointed to an inconsistency in the Debtor's deposition testimony when he was
asked about the liquidation of the WIS Account. The Debtor stated that it was liquidated in 1999 and was
gifted to his sons Matt and Marc, but could not remember whether the gift tax return was filed in 2000 or
2001.  See Deposition of Neal Jacobs on August 7, 2002, at 145-146, attached to Plaintiff's Brief in
Opposition to Non-Debtor Defendants' Motion for Summary Judgment at 4.

    C. Judgment is **GRANTED** in favor of the Non-Debtor Defendants on the Trustee's claims under 11 U.S.C. §544 set forth in **Count XII**.

    D. In all other respects, the Summary Judgment Motion is **DENIED**.

2. Judgment is entered in favor of the Trustee on **Count II** of the Complaint.[20]

3. Judgment is entered in favor of the Debtor on **Count IV** of the Complaint.[21]

4. The **Cross Motion** is **DENIED** in its entirety.

5. The **Motion to Amend** is **GRANTED** and:

    A. The Trustee is granted leave to file the Amended Complaint which is attached as an Exhibit to the Motion to Amend.

    B. The Trustee shall file the Amended Complaint on or before **January 30, 2009**.

    C. The Defendants shall file their respective Answers to the Amended Complaint on or before **February 6, 2009**.

6. The surviving claims in this adversary proceeding requiring a trial are as follows:

    A. **Count I**, against the Debtor under 11 U.S.C. §542;

    B. **Count III**, against the Debtor under 11 U.S.C. §542;

    C. **Count V**, against the Debtor and Mrs. Jacobs under 11 U.S.C. §542 and/or §544;

    D. **Count VI**, against the Debtor and Mrs. Jacobs under 11 U.S.C. §548;

---

[20]    According to the Joint Pre-Trial Statement, the Debtor is not contesting Count II and has agreed to turn over the subject property, i.e., the proceeds from the Mad Hatter Note currently being held in escrow by the Debtor's counsel.

[21]    According to the Joint Pre-Trial Statement, the Plaintiff concedes that the subject property of Count IV, the Salomon Smith Barney Account, is properly exempted.

E.  **Count VII**, against the Debtor under 11 U.S.C. §544;

F.  **Count VIII**, against the Debtor, Matthew Jacobs and Marc Jacobs under 11 U.S.C. §548(a)(1)(A) only;

G.  **Count IX**, against the Debtor, Hillcrest Racquet Club, Inc., M&M Real Estate Inc., Matthew Jacobs and Marc Jacobs under 11 U.S.C. §548;

H.  **Count X**, against the Debtor, Hillcrest Racquet Club, Inc., M&M Real Estate Inc., Matthew Jacobs and Marc Jacobs under 11 U.S.C. §§ 544 and 548;

I.  **Count XI**, against the Debtor under 11 U.S.C. §544;

J.  **Count XII**, against Matthew Jacobs and Marc Jacobs under 11 U.S.C. §548

7.  Any amendments to the Joint Pretrial Statement previously filed (or an Amended Joint Pretrial Statement) shall be filed on or before **February 13, 2009**.

8.  A final pretrial conference shall be held on **February 19, 2009 at 1:00 pm in Bankruptcy Courtroom No. 1, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, Second Floor, Philadelphia, Pennsylvania.**

9.  Absent compelling grounds, no extensions of the deadlines set forth in ¶¶5, 7 and 8 will be granted.

Date:   <u>**January 21, 2008**</u>          _____

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**